UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MANUEL TESILLO,

                                                                Plaintiff,

                                                                                                                     <u>DECISION AND ORDER</u>

                                                                                                                     04-CV-6537L

            v.

EMERGENCY PHYSICIAN ASSOCIATES, INC.,

                                                Defendant.
_____

       Plaintiff, Manuel Tesillo ("Tesillo"), commenced this federal[1] action against Emergency Physician Associates, Inc. ("EPA") only, claiming personal injuries as a result of medical malpractice committed by Dr. William C. Shepherd, M.D. in the Schuyler Hospital Emergency Department (sometimes "the Hospital"). Pending before the Court is EPA's motion for summary judgment. EPA claims that although it was responsible for hiring Dr. Shepherd to perform services

---

[1] Prior to the commencement of this action, Tesillo commenced a malpractice action in New York State Supreme Court against Dr. Shepherd and Schuyler Hospital. Discovery is apparently complete in that case and the matter is pending on the trial calendar in Schuyler Supreme Court.
    It is somewhat disconcerting that there are now two separate actions -- one in state court and this one in federal court -- involving the same set of operative facts. Both cases revolve around the principal issue of whether Dr. Shepherd was in fact "guilty" of malpractice in his brief treatment of Tesillo and whether Tesillo suffered any injuries that were proximately caused by Shepherd's action.
    Such duplication consumes not only the resources of the parties and counsel, but also judicial resources in both fora. There are also potential issues of collateral estoppel depending on the timing of decisions or judgments from the respective courts. These are matters, though, for another day.

at the Hospital, Dr. Shepherd was acting at all times as an independent contractor and not as an agent or employee of EPA. Plaintiff, on the other hand, contends that Dr. Shepherd was acting as an agent or employee of EPA, within the scope of its authority, and therefore EPA is vicariously liable under the principles of *respondeat superior*.

On the record before me, I believe that there are material issues of fact that preclude granting EPA's motion. Therefore, defendant's motion for summary judgment is denied.

**FACTS**

Tesillo was admitted to the Schuyler Emergency Department on December 5, 2002 at approximately 11:30 p.m., allegedly complaining of acute pain in his lower abdomen and groin area. It is conceded that Dr. Shepherd examined plaintiff, diagnosed him with probable gastritis and administered Toradol. Dr. Shepherd then discharged plaintiff, recommending that he make certain dietary changes and take Motrin for pain as needed.

Plaintiff alleges that Dr. Shepherd committed malpractice by failing to refer plaintiff to a urologist. Because Dr. Shepherd failed to do that, plaintiff continued to suffer pain and returned to the Emergency Department six hours later. There, he was seen by another physician who diagnosed plaintiff with testicular torsion. Plaintiff immediately underwent surgery to remove his left testicle.

Apparently during discovery in the state court medical malpractice action, plaintiff's counsel learned that, as of February 1, 2002, the Hospital had contracted with EPA for services relating to its Emergency Department. As set forth in more detail below, EPA contracted to supply qualified

physicians to staff the Emergency Department. EPA also contracted to manage numerous aspects of the Emergency Department.[2]

Plaintiff also learned that, on February 21, 2002, Dr. Shepherd had entered into a separate contract with EPA and EPS[3] to provide emergency medical services at the Hospital for the term of one year. The contract between the parties expressly states that Dr. Shepherd is an independent contractor subject to the agreement between EPA and the Hospital and that he is entitled to a flat fee of $90 for each hour that he works in the Emergency Department. There was no withholding for state or federal taxes.

### DISCUSSION

By this motion, EPA requests that the Court determine, as a matter of law, that it has no responsibility for the alleged malpractice of Dr. Shepherd. To resolve this, the Court must determine, based on the present record, the nature of the relationship between EPA and Dr. Shepherd, and to some extent, plaintiff.

It is clear that the Hospital entered into a detailed contract with EPA to take over and perform all services in the Emergency Department. In the Emergency Medical Services Agreement (Dkt. #3, Ex. C), EPA contracted in Section 1(a) that,

---

[2] *See* Dkt. #3, Ex. C, Emergency Medical Services Agreement, Section 1.

[3] The contract for Dr. Shepherd's services involves the additional entity of Emergency Physician Services, P.C. of New York ("EPS"). EPA maintains that Dr. Shepherd actually independently contracted with EPS, a New York corporation, rather than EPA, because EPA is a New Jersey corporation that cannot provide medical services, i.e. contract with physicians to practice in New York State. Construing the facts in a light most favorable to plaintiff, I find that, for purposes of this motion, questions of fact exist regarding whether EPS is the alter ego of EPA.

> Physicians provided by EPA shall exclusively perform all physician emergency services required by the Hospital, in the efficient and effective operation of its Emergency Department during the term of this agreement.

The contract also provided at Section 1(b) that,

> EPA shall assume and discharge all responsibilities required by the Hospital for the professional direction and medical supervision and management of emergency services in the Hospital.

Additionally, the contract states in Section 9(a) that,

> EPA and its physicians shall not be under the direction or supervision of the Hospital in the performance of their professional responsibilities.

It is also not disputed that Dr. Shepherd contacted EPA initially seeking employment and eventually entered into a separate contract with EPA and EPS to perform medical services at the Hospital (Dkt. #3, Ex. D). It is also clear that this contract by its terms described Dr. Shepherd as an independent contractor and not an employee. In the preamble to that agreement it states,

> WHEREAS, it is the desire [of the parties] that Physician contract…as an *independent contractor* to provide professional emergency services in the Emergency Department(s) of Schuyler Hospital, and any other mutually agreed upon locations. (*emphasis added*)

At Section 1, it further states that Dr. Shepherd was engaged,

> … on an *independent contracting basis* to perform professional emergency physician services in connection with the operation of the above mentioned Hospital(s) and its Emergency Department under and in accordance with certain agreements between [EPA] and said Hospital(s). (*emphasis added*)

EPA relies principally on this contract to support its contention that EPA is not responsible for the negligent acts of Dr. Shepherd, an independent contractor.

Generally, of course, the employer of an independent contractor is *not* liable for the torts of that contractor or its servants. *Kleeman v. Rheingold,* 81 N.Y.2d 270, 273 (1993); *Rosenberg v.*

- 4 -

*Equitable Life Assurance Soc'y of the U.S.*, 79 N.Y.2d 663, 668 (1992). This rule is based on the premise that one who hires a *bona fide* independent contractor gives up the right to control the manner in which the contractor completes the work. Therefore, the risk of loss under such circumstances is best placed on the contractor who operates in such a manner. *Berger v. Dykstra,* 203 A.D.2d 754, 754 (3d Dept. 1994) (citing *Kleeman*, 81 N.Y.2d at 273). However, that general rule is subject to several exceptions.

One such exception is based on agency by estoppel. In *Mduba v. Benedictine Hosp.,* 52 A.D.2d 450, 452 (3d Dept. 1976), the court held that because a hospital holds itself out as a place to receive emergency care, the public who enters the hospital through the emergency department has a reasonable expectation of receiving satisfactory treatment from any personnel furnished by the hospital to provide such care. Thus, if the hospital acts in such a way that the physician appears to be an employee, then the hospital shall be liable for the negligent acts of the physician, in spite of a contract between the physician and hospital describing the physician as an independent contractor and thereby purporting to limit the hospital's responsibility for his or her acts. *Id.* at 454. The *Mduba* court therefore held that, under such circumstances, patients are not bound by secret limitations contained in the private contracts between hospitals and the treating physicians.

Similarly, the court in *Hill v. St. Clare's Hosp.,* 67 N.Y.2d 72, 79 (1986) recognized agency by estoppel as "a predicate for malpractice liability" and conceded that sufficient evidence existed as to whether the owner of the clinic held the clinic out as offering medical services to the public, thereby requiring submission of the question to the jury.

Although the principle is sound, the current record before the Court does not support a determination, as a matter of law, that EPA should be responsible by virtue of agency by estoppel. Dr. Shepherd testified in the state court proceedings that there was no representation by either the Hospital or EPA of EPA's involvement in the Emergency Department, nor did Dr. Shepherd wear any identification identifying him as an EPA physician. (Dkt. #5, Ex. B at 31-33). At this point, plaintiff appears to concede, in both his papers and at oral argument, that there is no basis to hold EPA liable on the theory of agency by estoppel. Obviously, although plaintiff has done some discovery in the state court action, there has been virtually no discovery in this federal action and, therefore, no probing analysis of the relationship between the parties. If discovery uncovers further facts, then this principle may be applicable. But, at this point, the evidence does not support it.

There are other exceptions to the general rule, however, which, if the facts support it, could establish EPA's liability. Despite contractual provisions to the contrary, if an employer retains the right to control the manner in which the work is done by the so-called independent contractor, the independent contractor will be considered an employee and the employer will be subject to the principle of *respondeat superior*, regardless of the nomenclature used by the parties. Thus, an employer who exercises more than mere supervisory powers over the independent contractor may be vicariously liable for the torts of that contractor. *See Melbourne v. New York Life Ins., Co.*, 271 A.D.2d 296, 297 (1st Dept. 2000); *Willis v. City of New York*, 266 A.D.2d 208, 209 (2d Dept. 1999); *Berger*, 203 A.D.2d at 754; *Mduba,* 52 A.D.2d at 452-53. Therefore, the degree of control retained by EPA is a critical question of fact in determining whether Dr. Shepherd was truly an independent contractor or, rather, an agent or employee.

In *Mduba, supra,* 52 A.D.2d at 452-53, the court held that since the defendant hospital maintained control over the manner in which the physician operated the emergency room, the physician was an employee of the hospital and not an independent contractor, although described as such in his contract with the hospital. The facts of the case supported such a determination.  The fact that the physician was guaranteed a specific annual compensation, received clerical assistance from the hospital in billing patients, and charged patients at rates set by the hospital buttressed the claim that the physician was truly an employee. *Id.*; *see also Lewis v. Manis*, 266 A.D.2d 844 (4th Dept. 1999) (Court held that a hospital will be liable for the negligent care furnished by an independent contractor physician when a patient presents him/her self for emergency treatment and the hospital determines how and by whom the patient is treated).

While there is no single or absolute test for determining whether an independent contractor is actually an employee, there are numerous important factors to consider, including:

- the extent of control exercised over the work of the employee
- whether the employee is engaged in a distinct occupation or business
- whether the work usually is supervised by an employer in that particular locality
- what level of skill is required in the occupation
- whether the employer or the employee supplies the instrumentalities
- the length of employment
- whether payment is per job or time-based
- whether the work is part of the employer's regular business
- the intent/belief of the parties
- whether the worker receive benefits

See *Chaiken v. VV Pub. Corp.*, 119 F.3d 1018, 1033-1034 (2d Cir. 1997); *Hilton Int'l. Co. v. N.L.R.B.*, 690 F.2d 318, 320-21 (2d Cir. 1982).

On the record before me, I believe that there are issues of fact as to the extent to which EPA did control Dr. Shepherd and whether EPA's assumption of the duty to maintain the Emergency Department precludes summary judgment.

Many provisions of the <u>Emergency Medical Services Agreement</u> between EPA and the Hospital illustrate the broad nature of the obligations assumed by EPA pursuant to its contract with the Hospital. For example, the contract provides that EPA physicians will exclusively provide all emergency services required at the Hospital (Section 1(a)). Section 1(b) lists all of the managerial obligations assumed by EPA in the Emergency Department. EPA agreed to "assume and discharge all responsibilities" for the "professional direction and medical supervision and management" of the Emergency Department. These include staffing the Emergency Department at all times; developing and implementing a quality control and peer review program; developing and implementing a continuing education program for hospital staff, as well as advising the Hospital concerning Emergency Department policies and programs.

In addition, Section 1(d) provides that the director of the Emergency Department must be an EPA physician, appointed by the Hospital but removable by EPA on a showing of cause. This Director must assume and discharge all responsibilities required by the Hospital "for the professional direction and clinical supervision and management of the Hospital's Emergency Department." In addition, Section 2 of the contract provides that hospital employees, including nurses and technicians, must act "under the direction and supervision" of EPA's physicians. In terms of compensation, the Hospital compensated EPA for hiring and paying physicians at a rate of at least $90 but no more than $95 per hour for time spent staffing the Emergency Department. EPA was also

responsible, under Section 8, for carrying professional liability insurance policies for each of its physicians in the amount of at least $1,000,000/$3,000,000. The contract also provided that neither EPA nor its physicians would be under the direction or supervision of the Hospital in the performance of the duties assumed.

Both parties principally rely on the contracts to support their respective positions. Plaintiff relies on the broad terms of the contract between EPA and Schuyler Hospital characterizing EPA as the "employer" of Dr. Shepherd. EPA however relies on that portion of the contract between EPA, EPS and Dr. Shepherd that describes Dr. Shepherd as an independent contractor.

Summary judgment is appropriate only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.' . . . An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir.2001)(quoting *Anderson*, 477 U.S. at 248); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The issue of an employer/employee relationship "usually presents a question of fact, but when the evidence in the record on the issue of control is undisputed, the matter may properly be determined by the court as a matter of law." *Berger*, 203 A.D.2d at 754; *see also Melbourne*, 271

A.D.2d at 297-98; *Malamood v. Kiamesha Concord, Inc.*, 210 A.D.2d 26, 26 (1st Dept. 1994); *Lazo v. Mak's Trading Co.*, 199 A.D.2d 165, 166 (1st Dept. 1993), *aff'd* 84 N.Y.2d 896 (1994). Therefore, the issue of control is an issue of material fact because it is determinative, and if the extent of control is disputed, the issue should be submitted to the jury. *Felice v. St. Agnes Hosp.*, 65 A.D.2d 388, 396 (2d Dept. 1978) (Court held that, at the time of the action, the court could not presume that evidence would not be adduced either before or during trial, and that whether three physicians were independent contractors, "was...an ultimate or conclusory fact which can only be determined after a full and complete trial...from the evidence itself...from the contract itself, the attitude of the parties toward each other, the nature of the work, and all relevant circumstances.") *c.f. Murphy v. Guilford Mills, Inc.,* No. 02 Civ. 10105, 2005 WL 957333, *5 (S.D.N.Y. Apr. 22, 2005) (defendant in negligence action held to be the employer of an independent contractor and not an employee where plaintiff failed to produce evidence indicating that defendant directed or controlled the "methods and means" by which the employer performed his work).

Based on the record before me, I believe there is a material issue of fact as to EPA's role in the management of the Emergency Department and EPA's control over the work of Dr. Shepherd. Although the parties referenced at oral argument that Dr. Shepherd testified to some degree about this issue in the state court action, that portion of testimony has not been submitted to the Court on this motion and, in any event, there has been little other discovery on the issue. At this juncture, the Court cannot decide, as a matter of law, whether Dr. Shepherd was an employee of EPA under the

circumstances and whether EPA's contractual obligation to manage and supervise the Emergency Department is of such a nature that it should be vicariously liable for the alleged malpractice of Dr. Shepherd. *Malamood*, 210 A.D.2d at 26; *Felice*, 65 A.D.2d at 396.

The Court recognizes that Dr. Shepherd was expressly denominated as an independent contractor in his employment contract. As previously noted, however, describing one as an "independent contractor" does not necessarily make it so if the employer retains the ability to control the manner in which the independent contractor does his work. *Melbourne,* 271 A.D.2d at 297; *Mduba,* 52 A.D.2d at 452-53. In addition, EPA assumed significant and extensive responsibilities concerning the operation of the Emergency Department at the Hospital. The scope of its obligations, at least as set forth in the contract, could not be more extensive. EPA's responsibilities concerning scheduling and personnel management in the Emergency Department, as well as EPA's obligations to maintain a quality control program are factors to be considered. In addition, facts concerning whether EPA set any standards or guidelines and conducted any peer review of its physicians are germane to the issue of control. In sum, there are significant issues of fact which preclude summary judgment.[4]

---

[4]Denial of EPA's present motion does not foreclose the issue for all times. The contract does describe Dr. Shepherd as an "independent contractor" and it appears that the contracting parties intended that he act in that capacity. Plaintiff would seem to have the burden of showing that Dr. Shepherd was in fact something other than what he had contracted to be, that is, an independent contractor.

The facts that will be developed during discovery, or even trial, could present a clear picture of the relationship among the parties and the degree of control exercised by EPA over Dr. Shepherd. Discovery could also clarify the relationship between EPA and EPS and shed light on their corporate structures. If the facts warrant it, judgment as a matter of law could still be entered for EPA.

## CONCLUSION

Defendant EPA's motion for summary judgment (Dkt. #3) is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       July 18, 2005.